### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JUSTIN DYE,
        Plaintiff,

                    v.

AMDOCS DEVELOPMENT CENTRE INDIA,
LLP and SAMRAT TAWARE,
        Defendants.

Civil Action No.
1:18-cv-02122-SDG

### <u>OPINION AND ORDER</u>

This matter is before the Court on the parties' responses to the April 14, 2020

Order to Show Cause why this case should not be remanded to the State Court of

Gwinnett County, Georgia [ECF 43], as well as the Court's August 28, 2019 Order

to Show Cause why Defendant Samrat Taware should not be dismissed from this

case [ECF 26] and Plaintiff's response thereto [ECF 28]; Defendant Amdocs

Development Centre India, LLP's motion to dismiss [ECF 35]; and Plaintiff's

motion for leave to amend the complaint [ECF 39]. For the reasons stated below,

the Court concludes that it may properly exercise subject matter jurisdiction over

this action. Plaintiff's request for additional time to serve the Complaint on Taware

is **GRANTED.** Plaintiff shall have through and including November 30, 2020, to

file proof of service on Taware. Defendant Amdocs Development Centre India,

LLP's motion to dismiss is **DENIED** and Plaintiff's motion for leave to amend the Complaint is **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND

This personal injury case was initiated in the State Court of Gwinnett County, Georgia on July 13, 2017.[1] Plaintiff Justin Dye asserts a claim for negligence related to a car accident that occurred on March 25, 2017.[2] The car was allegedly driven by Taware.[3] Dye initially alleged that, at the time of the accident, Taware was acting in the scope of his employment for Amdocs, Inc., which was purportedly liable to Dye under a theory of agency, *respondeat superior*, or vicarious liability.[4] The Complaint did not identify an amount of damages sought.[5]

The case was removed to this Court on May 14, 2018 by Amdocs, Inc. (which has since been dismissed from the action).[6] Removal was based on diversity of citizenship.[7] Amdocs, Inc. is a Delaware Corporation, with its

---

[1]   ECF 1-1, at 3–6.

[2]   *Id.* at 4, ¶¶ 7–9.

[3]   *Id.* ¶¶ 8–12.

[4]   *Id.* at 5, ¶¶ 18–19.

[5]   *Id.* at 3–6.

[6]   ECF 1; ECF 10.

[7]   ECF 1.

principal place of business in Missouri.[8] Taware is alleged to be a resident of India.[9] Dye appears to be a citizen of the State of Georgia.[10] Amdocs, Inc. asserted—based solely on an affidavit provided by its counsel—that the amount in controversy exceeded $75,000 based on Dye's April 24, 2018 demand letter seeking $350,000 in damages, $18,435 of which were identified as medical expenses.[11] The affidavit did not attach a copy of the settlement demand.[12]

After Dye and Amdocs, Inc. exchanged discovery, Dye confirmed that, at the time of the accident, Taware was employed by Amdocs Development Centre India, LLP (Amdocs Centre), rather than Amdocs, Inc.[13] Accordingly, on August 9, 2018, Dye sought to amend the complaint to add Amdocs Centre as a defendant and to drop Amdocs, Inc. as a party.[14] The parties did not raise any jurisdictional issue at that point, and the Court granted Dye's motion on September 4, 2018.[15]

---

[8]   *Id.* ¶ 3.

[9]   *Id.* ¶ 4; ECF 1-1, at 3 ¶ 2.

[10]   ECF 28, at 16.

[11]   ECF 1, ¶ 6; ECF 1-10 (Major Aff.), ¶¶ 3–4.

[12]   *See generally* ECF 1-10.

[13]   ECF 9, ¶ 4.

[14]   *See generally* ECF 9.

[15]   ECF 10.

Dye filed the Amended Complaint that same day.[16] The amended pleading, like Dye's original one, did not identify any amount of damages sought.[17] The summons to Amdocs Centre was issued on October 5, 2018.[18]

On October 22, 2018, Dye sought leave to file a Second Amended Complaint (the SAC) to correct a misspelling in Amdocs Centre's name.[19] That motion was granted on November 14, and the amended pleading was filed the same day.[20] The SAC did not identify any amount of damages sought by Dye.[21] The summons for Amdocs Centre was issued on November 19, 2018.[22] That same day, Dye provided the process server with all of the necessary documentation to effect service under

---

[16]   ECF 11.

[17]   *Id.*

[18]   ECF 12. Although the summons was addressed correctly, the caption misspelled the word "Centre" as "Center."

[19]   ECF 13.

[20]   ECF 14; ECF 15.

[21]   *See generally* ECF 15.

[22]   ECF 17. A summons issued on November 14, 2018, while addressed correctly, misspelled "Centre" in the case caption. ECF 16. The error was corrected in the November 19 summons. ECF 17. For purposes of this Order, this issue is immaterial.

the Hague Convention.[23] The documents were sent to India's Central Authority on November 28, which received them on December 3.[24]

On January 10, 2019, Dye moved to extend the close of discovery from February 15, 2019 to August 15, 2019.[25] At that point, the parties had already been permitted eight months of discovery.[26] Dye asserted that both Defendants (Taware and Amdocs Centre) were domiciled in India and had to be served in strict accordance with the Hague Convention.[27] Dye further indicated that Defendants had not yet been served with process and noted the difficulty of locating and preserving evidence outside of the United States.[28] The Court granted the discovery extension on January 31, 2019.[29] At that point, no summons had ever been issued for Taware—either while the case was pending in the state court or after it was removed to this Court.

---

[23]   ECF 37, at 14 ¶ 4.

[24]   *Id.* at ¶¶ 5–6.

[25]   ECF 18.

[26]   *Id.* at 1–2.

[27]   *Id.* at 1.

[28]   *Id.* at 1–2.

[29]   ECF 20.

On March 28, 2019, Amdocs Centre answered the SAC, asserting defenses (among other things) of lack of personal and subject matter jurisdiction, insufficiency of process, and insufficiency of service of process.[30] On May 21, 2019, a summons was issued for Taware.[31] On August 23, 2019, Dye filed a motion to re-open/extend discovery for essentially the same reasons he had sought the earlier extension.[32] Amdocs Centre did not file a response.

On August 28, 2019, after a *sua sponte* review of the record, the Court issued an order to show cause (OTSC) directing Dye to demonstrate why Taware should not be dismissed from the case for failure to effect service as required by Fed. R. Civ. P. 4.[33] Dye and Amdocs Centre were also directed to file an Amended Joint Preliminary Report and Discovery Plan.[34] Dye responded to the OTSC on September 9, asserting that he had been diligent in attempting to serve Taware and seeking an additional twelve months to perfect service.[35]

---

[30]   ECF 22, at 6–7.

[31]   ECF 24.

[32]   ECF 25.

[33]   ECF 26, at 1.

[34]   *Id.* at 2.

[35]   ECF 28, at 1; *id.* 2 ¶ 3.

On September 11, 2019, pursuant to the Court's August 28, 2019 OTSC, Dye and Amdocs Centre filed an amended joint preliminary report, which indicated the parties would need eight months of discovery "once the Defendants are served."[36] In addition, Amdocs Centre asserted that jurisdiction was improper because it had not been served with process and there was no long-arm jurisdiction.[37] However, on October 30, 2019, Amdocs Centre was served.[38] On January 27, 2020, it purported to amend its answer, without leave of Court or Dye's consent.[39] On February 5, 2020, Amdocs Centre filed a motion to dismiss.[40] Dye responded on February 17.[41] Amdocs Centre did not file a reply.

On March 12, 2020, Dye filed a motion for leave to file a Third Amended Complaint (TAC).[42] Amdocs Centre did not file an opposition. On April 14, 2020, the Court issued a second OTSC directing the parties to show cause why this case

---

[36]   ECF 29, at 7 ¶ 10.

[37]   *Id.* at 12 (citing *Underwriters at Lloyd's London v. Osting-Schwinn*, 613 F.3d 1079, 1086 (11th Cir. 2010)).

[38]   ECF 31. The proof of service was filed on January 13, 2020. ECF 31.

[39]   ECF 33.

[40]   ECF 35.

[41]   ECF 37.

[42]   ECF 39.

should not be remanded because the amount in controversy had not been met.[43]

The parties separately responded to the Court's order on April 28.[44] Dye urged the

Court to remand the case,[45] despite his earlier assertions that federal subject matter

jurisdiction existed.[46] In contrast, Amdocs Centre argued that the amount in

controversy was satisfied.[47] It also argued that, if the Court lacked subject matter

jurisdiction, the case should be dismissed.[48] Amdocs Centre's filing included a

copy of Dye's settlement demand, which attached various medical records

documenting his injuries.[49]

      To date, there is no indication in the record that Taware has been served

with process, nor has he voluntarily appeared in this action.

---

[43]  ECF 43.

[44]  ECF 44; ECF 45.

[45]  ECF 44.

[46]  *See, e.g.*, ECF 37, at 2–3 (opposing Amdocs Centre's motion to dismiss, arguing that Dye had made a *prima facie* case for subject matter jurisdiction); ECF 39 (seeking leave to amend pleading to clearly allege complete diversity).

[47]  *See generally* ECF 45, at 3–6.

[48]  *Id.* at 2.

[49]  *Id.* at 12–231.

## II.   DISCUSSION

### a.   This Court Has Subject Matter Jurisdiction.

The Court must consider whether it has subject matter jurisdiction to hear a case, regardless of whether the issue is raised by the parties. *Arbough v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[Federal courts] have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Former Defendant Amdocs, Inc. removed this case pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction under 28 U.S.C. § 1332.[50] Diversity jurisdiction requires complete diversity of citizenship of the parties and an amount in controversy exceeding $75,000. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996) (stating complete diversity requires that every plaintiff be diverse from every defendant), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); 28 U.S.C. § 1332(a) (reflecting required amount

---

[50]   ECF 1, ¶ 9.

in controversy).[51] The amount in controversy is measured "on the date on which the court's diversity jurisdiction is first invoked, in this case on the date of removal." *The Burt Co. v. Clarendon Nat. Ins. Co.*, 385 F. App'x 892, 894 (11th Cir. 2010). The party seeking to invoke federal diversity jurisdiction must show by a preponderance of the evidence that the claim meets the threshold jurisdictional amount of $75,000. *Wineberger v. RaceTrac Petroleum, Inc.*, 672 F. App'x 914, 916–17 (11th Cir. 2016) (citing *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)).

Amdocs, Inc. based the amount in controversy solely on its counsel's testimony concerning Dye's $350,000 settlement demand.[52] Such evidence is not, however, an entirely reliable indicator of the damages a plaintiff seeks or the value of a plaintiff's claims. "'Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence.'" *Ware v. Checkers Drive-In Rests., Inc.*, Civ. A. No. 1:17-cv-2109-AT, 2017 WL 10378127, at *2 (N.D. Ga. June 30, 2017) (quoting *Jackson v. Select Portfolio Serv., Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009)).

---

[51]   The issue of complete diversity is discussed below in connection with Amdocs Centre's motion to dismiss. *See infra* Section II.c.2.

[52]   *See generally* ECF 1; ECF 1-10.

In its response to the Court's April 14, 2020 OTSC, however, current Defendant Amdocs Centre provided the actual settlement demand from Dye, along with his medical records.[53] The medical records demonstrate that Dye's alleged injuries include a serious cervical spine injury for which doctors have repeatedly recommended surgery.[54] Coupled with Dye's documented medical expenses at the time of removal (an alleged total of $18,435), Dye's purported need for future neck surgery satisfies the necessary amount in controversy. *Wineberger*, 672 F. App'x at 917 ("District courts may 'make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case . . . establishes the jurisdictional amount.' Courts are not limited to a 'plaintiff's representations regarding its claim . . . [and] may use their judicial experience and common sense.'") (omissions and alteration in original) (quoting *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010)).

Accordingly, the Court may properly exercise subject matter jurisdiction over this action.

---

[53]   ECF 45, at 12–231.

[54]   *See, e.g., id.* at 5, 13–16.

b.   **The Court Will Grant Dye a Limited Amount of Additional Time to Serve Taware.**

The Court's August 28, 2019 OTSC directed Dye to show cause why Taware should not be dismissed from this action for failure to timely effect service of process.[55] Dye responded to the OTSC on September 9, 2019.[56] Based on the record, Dye did not attempt to serve Taware until after the case had been removed.[57] "Once Defendant Amdocs [Inc.] filed their [sic] Answer, it was Dye's hope that they or their lawyers would accept and/or waive service on behalf of Defendant Taware, who Dye believed was their employee and co-Defendant."[58] However, Amdocs, Inc. refused to do so—as Dye concedes was its right.[59] Dye did not have an address at which to serve Taware at that point,[60] and no summons for him had

---

[55]   ECF 26.

[56]   ECF 28.

[57]   *Id.* at 5, ¶ 11.

[58]   *Id.* at 4, ¶ 7 (citation omitted).

[59]   *Id.* at 4, ¶ 9.

[60]   *Id.* at ¶ 8 ("[B]ecause there was no formal police report prepared for the [accident], Plaintiff was left with an unknown, unofficial foreign address for Defendant Taware. Accordingly, within Plaintiff's discovery requests to Defendant Amdocs, and through email correspondence with Amdocs counsel, Plaintiff attempted to get a valid Indian address for Defendant Taware.") (citations omitted).

been issued. Fed. R. Civ. P. 4(c) ("A summons *must* be served with a copy of the complaint.") (emphasis added).

It was only after Amdocs, Inc. declined to accept service for Taware in May 2018 that Dye began efforts to serve him.[61] The process server engaged by Dye for this purpose apparently absconded with Dye's money and never effected service.[62] Despite various attempts—over 15 months—to contact this process server, Dye did not engage his second process server (APS) until March 2019.[63] Even then, Dye only provided APS with partial documents for service on Taware.[64] Complete sets of documents for service on Taware were not provided by Dye until May 2019.[65] Dye has not explained these delays.

On May 29, 2019, APS sent the service materials to the designated Central Authority in India for service under the Hague Convention.[66] The Central Authority received the documents on June 3, 2019.[67] According to APS, service in

---

[61] *Id.* at 5, ¶ 11.

[62] *Id.* at 5–6, ¶¶ 11–13.

[63] *Id.* at 6, ¶ 13.

[64] *Id.* at 10, ¶ 4.

[65] *Id.*

[66] *Id.* at 10, ¶ 5.

[67] *Id.* ¶ 6.

India generally takes twelve months or longer after the Central Authority receives the materials and transmission of the proof of service (or non-service) takes an additional three or four months.[68] Assuming the accuracy of APS's 15-to-16-month timetable, service on Taware may not be perfected until approximately October 2020.

Although the 90-day time limit in which to serve a defendant under Rule 4(m) expressly does not apply to service of process on Taware in a foreign country, district courts are within their discretion to dismiss an action with or without prejudice where a plaintiff has failed to exercise diligence in attempting to effect service on a foreign defendant. *Harris v. Orange S.A.*, 636 F. App'x 476, 485–86 (11th Cir. 2015) (applying "flexible due diligence" standard to time-frame in which to effect service on foreign defendant); *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005) ("The Supreme Court also has held that '[t]he authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an "inherent power," governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs.'") (alteration in original) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962)). *See also* Fed. R. Civ. P.

---

[68]   *Id.* at 6, ¶ 14; *id.* at 10–11 ¶¶ 7, 8.

41(b); *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1319–20 (11th Cir. 2015) (noting Fed. R. Civ. P. 41(b) permits dismissal of action for failure to obey court order or federal rule).

The difficulties of serving a foreign defendant do not explain Dye's extreme delays starting the service process or in trying to perfect service thereafter.

> To avoid dismissal for lack of diligence, a plaintiff must demonstrate "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice."

*Harris*, 636 F. App'x at 486 (upholding dismissal of foreign defendants in light of plaintiff's failure to pursue efforts to diligently effectuate service of process) (quoting *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995)). Dye has not shown diligence or excusable neglect. Nevertheless, the Court will provide Dye with a limited amount of additional time, through and including November 30, 2020, to file proof of valid service on Taware. Failure to do so by that date will likely result in Taware's dismissal from this case for failure to perfect service.

### c.   Amdocs Centre's Motion to Dismiss Is Denied.

Amdocs Centre's motion to dismiss argues that this Court lacks subject matter jurisdiction because neither Defendant has been served.[69] It also contends

---

[69]   ECF 35-1, at 2.

that there is no diversity jurisdiction because it is a limited liability partnership.[70]
Finally, according to Amdocs Centre, the claims against it are barred by the
applicable statute of limitation.[71] The Court addresses each of these points *seriatim*.

### 1. Service on Defendants

In contrast to his conduct with regard to service on Taware, Dye was
diligent in his efforts to serve Amdocs Centre once he learned it was the correct
party. He sought to amend his complaint to substitute it as a defendant,[72] and
promptly obtained a summons after the amendment.[73] He then sought to correct
the incorrect spelling of Amdocs Centre's name in the pleading, and obtained a
new summons after making the correction.[74] Documents were sent to India for
service pursuant to the Hague Convention shortly after the summons with the
correct entity name and caption were issued.[75] On March 8, 2019, APS obtained
acknowledgment of receipt of the service materials from the Indian Central

---

[70]   *Id.*

[71]   *Id.*

[72]   ECF 9.

[73]   ECF 10; ECF 12.

[74]   ECF 13; ECF 16. *See also* ECF 17.

[75]   ECF 28, at 42 (indicating documents sent to India for service on Amdocs Centre
on Nov. 28, 2018).

Authority.[76] Given APS's testimony about the length of time service can take in India under the Hague Convention, it is no surprise (or fault of Dye) that service on Amdocs Centre was not completed until October 30, 2019 (with the proof of service being filed on January 13, 2020).[77] Once APS sent the service materials to the Central Authority, the promptness of service on Amdocs Centre was not within APS's or Dye's control.

As discussed above, there is no specific time frame in which a plaintiff must serve a foreign defendant. Fed. R. Civ. P. 4(m); *Harris*, 636 F. App'x at 485–86. Applying the "flexible due diligence" standard approved by the Eleventh Circuit, the Court concludes Dye's efforts to serve Amdocs Centre were sufficiently diligent. Because Amdocs Centre has been served (and it is now the only Defendant in the action), its arguments about the lack of subject matter jurisdiction for this reason are unavailing.

### 2.    Complete Diversity

Amdocs Centre argues that it is an LLP and that, since Dye did not "identif[y] and ***serve***[ ] all members of the LLP, he has not established diversity

---

[76]  *Id.*

[77]  ECF 31. *See also* ECF 32.

jurisdiction."[78] It is true that, where a defendant is a partnership, a plaintiff must provide the citizenship of each of its partners and subpartners until the Court is left with individuals or corporations from which to evaluate diversity. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569 (2004) (noting the "accepted rule that . . . [a partnership] is a citizen of each State or foreign country of which any of its partners is a citizen."); *see also RES-GA Creekside Manor, L.L.C. v. Star Home Builders, Inc.*, No. 2:10-CV-207-RWS, 2011 WL 6019904, at *3 (N.D. Ga. Dec. 2, 2011) ("[W]hen an entity is composed of multiple layers of constituent entities, the citizenship determination requires an exploration of the citizenship of the constituent entities as far down as necessary to unravel fully the citizenship of the entity before the court." Amdocs Centre, however, cites no authority supporting the proposition that those partners and subpartners must be **served** with the operative pleading in order for the Court to properly exercise diversity jurisdiction.[79] The Eleventh Circuit's decision in *Underwriters at Lloyd's, London v. Osting-Schwinn*, on which Amdocs Centre relies,[80] says nothing about *service* on partners or subpartners. Instead, that case makes clear that the citizenship of each

---

[78]  ECF 35-1, at 3–4 (emphasis added).

[79]  *Id.*

[80]  *Id.*

member of an unincorporated association must be *pleaded* to establish diversity jurisdiction. 613 F.3d 1079, 1081 (11th Cir. 2010).

Further, Amdocs Centre has not shown that it is *Dye* who bears the burden of establishing diversity jurisdiction. Although Amdocs Centre asserts that, because it is the one "sought to be brought into this lawsuit that was pending in federal court," the burden lies with Dye.[81] But this case wasn't initiated in federal court. Rather, it was removed here by Amdocs Centre's predecessor defendant.[82] When a case has been removed, it is generally the *defendant* that carries the burden of establishing the existence of federal jurisdiction. *Osting-Schwinn*, 613 F.3d at 1085 ("The party commencing suit in federal court . . . has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction.") (citations omitted). And, while Dye's opposition to Amdocs Centre's motion to dismiss seems to agree that the burden is his,[83] Dye's response to the Court's April 14, 2020 OTSC states that the burden belongs to Amdocs

---

81   *Id.* at 3 (citing *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007)).

82   ECF 1.

83   ECF 37, at 2 ("Plaintiff has presented a prima facie case of this Court's subject matter jurisdiction . . . . Because we are still at the pleadings stage, prior to discovery being exchanged, Plaintiff is required only to make a prima facie showing of this Court's jurisdiction.") (citation omitted).

Centre.[84] It is not clear from any of the case law cited by the parties with whom the burden lies under the unusual procedural posture and factual background presented by this action.

Regardless of which party has the burden here, the Court concludes that the members of Amdocs Centre have been sufficiently identified and that there is complete diversity. In his motion for leave to amend his pleading, Dye seeks permission to add the names of and citizenship for Amdocs Centre's partners—Amdocs Development Limited, which is incorporated in Cypress, and European Software Marketing, Ltd., incorporated in Gurnsey.[85] This information is sufficient to demonstrate complete diversity—particularly since it is based on Amdocs Centre's own interrogatory responses. Therefore, Amdocs Centre's argument that there is a lack of complete diversity fails.

### 3.   Statute of Limitation

Georgia state law controls when this action was "commenced" for purposes of tolling the applicable statute of limitation. *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980), *overruled on other grounds by Giles v State Farm Mut. Ins. Co.*, 330 Ga. App. 314, 317 (2014); *Strickland v. Arch Ins. Co.*, 718 F. App'x 927, 929 (11th Cir. 2018) (per

---

[84]   ECF 44, at 1.

[85]   ECF 39, at ¶ 1; *id.* at 9 (Amdocs Centre's Resp. to Interrog. 1).

curiam). In Georgia, a civil suit commences when the complaint is filed with the court. O.C.G.A. § 9-11-3. *See also Messina v. Yarbrough*, Civ. A. No. 1:15-cv-1379-ODE, 2016 WL 11501710, at *2 (N.D. Ga. Feb. 25, 2016) ("In Georgia, a lawsuit is commenced by filing a complaint with the state court.") (citing O.C.G.A. § 9-11-3).

Here, it is clear that the action was "commenced" within the applicable two-year statute of limitation: The accident occurred on March 25, 2017 and Dye initiated suit on July 13, 2017.[86] It is also clear that Amdocs Centre was added as a named Defendant within the limitations period. The FAC, in which it was first named as a defendant (albeit with the incorrect spelling of "Center"), was filed on September 4, 2018.[87] The spelling error itself was corrected in the SAC, which was also filed within the limitations period.[88] Dye promptly provided the process server with all of the necessary documentation for service by November 19, 2018.[89] The documents were sent to India's Central Authority on November 28, which received them on December 3.[90] The materials were sent to the local Indian court

---

[86]   ECF 1-1, at 4 ¶¶ 7–9; *id.* at 2.

[87]   ECF 11.

[88]   ECF 15.

[89]   ECF 37, at 14 ¶ 4.

[90]   *Id.* at ¶¶ 5–6.

for service on March 8, 2019.[91] All of this took place during the limitations period and was beyond Dye's ability to expedite once the materials were sent to India's Central Authority.

Amdocs Centre answered on March 28, 2019,[92] but wasn't officially served until October 30, 2019.[93] Both of these events took place *after* the statute of limitation had run. As a result, the question this Court must answer under this set of facts is whether service on Amdocs Centre relates back to the original filing of the Complaint (or some point in time prior to the expiration of the statute of limitation), such that Dye's claims were timely. The answer is yes.

O.C.G.A. § 9-11-4(c) provides that, "[w]hen service is to be made within this state, the person making such service shall make the service within five days from the time of receiving the summons and complaint; but failure to make service within the five-day period will not invalidate a later service." (Emphasis added.)[94]

---

[91]   *Id.* at 15 ¶ 8.

[92]   ECF 22.

[93]   ECF 31.

[94]   The Georgia Court of Appeals has indicated that the five-day safe harbor period also applies when service is made *outside* of the State pursuant to Georgia's long arm statute. *Smith v. Griggs*, 164 Ga. App. 15, 17 (1982) (discussing predecessor statutes to O.C.G.A. §§ 9-10-94 and 9-11-4(c)).

The Georgia Court of Appeals has stated that the "general rule" under this provision is "properly stated as follows":

> If the filing of the petition is followed by timely service perfected as required by law, although the statute of limitation runs between the date of the filing of the petition and the date of service, the service will relate back to the time of filing so as to avoid the limitation.

*Giles*, 330 Ga. App. at 317 (internal quotation marks omitted) (citations omitted). "Where a complaint is filed near the statute of limitation and service is made after the statute expires and after the five-day safe harbor provision contained within OCGA § 9-11-4(c), the relation back of the service to the date of filing is dependent upon the diligence exercised by the plaintiff in perfecting service." 330 Ga. App. at 318 (internal quotation marks omitted) (citations omitted). *See also Ga. Farm Bureau Mut. Ins. Co. v. Kilgore*, 265 Ga. 836, 837 (1995) ("If the timely filing of the pleading is followed by timely service perfected as authorized by law, the subsequent service will relate back to the initial filing even though the statute of limitations has run in the interim. . . . Where the applicable statute of limitations runs between the date of filing and the date of service, the relation back of the latter to the former is dependent upon the diligence exercised by the plaintiff in perfecting service.") (citations omitted); *South v. Montoya*, 244 Ga. App. 52, 52 (2000) ("If service is perfected in accordance with statutory requirements, the date

of service relates back to the date of filing, which establishes the date the action is

commenced. If service is never perfected and is not waived, the court does not

acquire jurisdiction over the defendant and the suit is void, since the filing of a

complaint without perfecting service does not constitute a pending suit.") (citing

*Thorburn Co. v. Allied Media of Ga.*, 237 Ga. App. 800, 802 (1999); *Cambridge Mut.*

*Fire Ins. Co. v. City of Claxton*, 720 F.2d 1230, 1233 (11th Cir. 1983) ("If . . . service is

perfected more than five days after the filing of the complaint and after the statute

of limitations has run, service will relate back only if the plaintiff diligently

attempted to perfect service.") (applying Georgia law) (citations omitted)).

Under such circumstances, the plaintiff must "provide specific dates or

details to show diligence." *Walker*, 321 Ga. App. at 631 (internal quotation marks

omitted) (citations omitted).

> Where, as here, a complaint is filed near the expiration of
> the applicable statute of limitation and service is made
> after the five-day grace period of OCGA § 9-11-4(c), the
> plaintiff bears the burden of showing that she exercised
> due diligence in perfecting service. Where the plaintiff
> can show due diligence, the service will relate back to the
> time of the filing of the complaint, effectively tolling the
> statute of limitation.

*Mitsubishi Motors Corp. v. Colemon*, 290 Ga. App. 86, 90 (2008) (footnotes omitted).

That is exactly the scenario presented here. As described above, Dye has shown

that he exercised diligence in perfecting service on Amdocs Centre after adding it

as a Defendant in this case. The record demonstrates that, once the service documents were sent to the Indian Central Authority, (1) service of process could take twelve months or longer and (2) neither Dye nor APS had any ability to control or expedite that process.[95] The record does not show that Dye was ever informed of a problem with service on Amdocs Centre such that he was required to exercise the "greatest possible diligence" to ensure prompt service. *Scanlan v. Tate Supply Co.*, 303 Ga. App. 9, 11 (2010), *overruled on other grounds by Giles*, 330 Ga. App. 314. Because Dye exercised the necessary diligence, service on Amdocs Centre relates back (at the very least) to the filing of the FAC and was timely under Georgia's two-year statute of limitation. Amdocs Centre's motion to dismiss based on the statute of limitation is **DENIED**.

### d.    Dye Is Granted Leave to Amend His Complaint Consistent with Federal Pleading Standards.

In his motion for leave to file the Third Amended Complaint, Dye requests permission to add the names of Amdocs Centre's members to his pleading to demonstrate that complete diversity exists.[96] Amdocs Centre did not oppose the motion. Despite his response to the Court's April 2020 OTSC (asserting that the

---

[95]   ECF 37, at 14–15 ¶ 7.

[96]   ECF 39.

case should be remanded),[97] Dye has not withdrawn his motion for leave. Since the Court has concluded that it may appropriately exercise subject matter jurisdiction over this action, it will permit Dye to amend his pleading consistent with this Order.

Dye has previously amended his pleading to add Amdocs Centre as a named Defendant and to correct a misspelling in its name.[98] Those amendments, however, did not make any other material changes.[99] In fact, Dye has never fundamentally changed his pleading from the one that was filed in state court.[100] It has long been clear, however, that federal pleading standards apply to removed cases. *Hanna v. Plumer*, 380 U.S. 460, 473–74 (1965) ("To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act.") (footnote omitted) (citations omitted). Dye's pleading does not clearly set out separate causes of action, nor does he state facts showing how

---

[97]   ECF 44.

[98]   ECF 10 (order permitting first amended complaint); ECF 14 (order permitting second amended complaint).

[99]   ECF 11 (FAC); ECF 15 (SAC).

[100]   *Compare* ECF 1-1, at 3–6 *with* ECF 11 *and* ECF 15.

Taware was acting within the scope of his employment for Amdocs Centre or why Amdocs Centre has potential liability for Taware's conduct. *See, e.g., Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (describing types of shotgun pleadings, including those that do not separate "into a different count each cause of action or claim for relief" or that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against") (footnotes omitted).

While Amdocs Centre did not challenge Dye's complaint for violating federal pleading rules or filing a shotgun complaint, this Court believes that many of the procedural issues presented by this action could have been simplified had Dye's amended pleadings complied with federal pleading requirements. The Court will permit Dye to amend his pleading—but not with the proposed Third Amended Complaint attached to his motion for leave. Rather, Dye is given leave to file a Third Amended Complaint that complies with this Order and federal pleading standards.

## III.   CONCLUSION

Plaintiff Justin Dye's request for additional time to serve Defendant Samrat Taware with process is **GRANTED.** Dye shall have through and including

November 30, 2020 to file proof of service on Taware. Dye's motion for order to show cause [ECF 28] is therefore **GRANTED**. The Clerk of Court is **DIRECTED** to resubmit this Order to the undersigned on December 1, 2020.

The Court concludes that it has subject matter jurisdiction over this action based on the complete diversity of the parties and an amount in controversy in excess of $75,000. Accordingly, Defendant Amdocs Development Centre India, LLP's motion to dismiss [ECF 35] is **DENIED** and Dye's motion for leave to amend the complaint [ECF 39] is **GRANTED in part** and **DENIED in part**. Dye's motion is **GRANTED** to the extent that he seeks to include the citizenship of the members of Amdocs Centre in the amended pleading. Dye is **DIRECTED** to identify the citizenship of *all* parties in the TAC—including the place of incorporation and headquarters of Amdocs Centre's members. Dye's motion for leave is **DENIED** to the extent he seeks to file the proposed Third Amended Complaint as the operative pleading in this action.[101]

Dye shall have 14 days after entry of this Order to file a Third Amended Complaint consistent with the Court's rulings and federal pleading standards.

---

[101]  ECF 39, at 11–16.

Amdocs Centre shall have 14 days after the Third Amended Complaint is filed to

answer or otherwise respond to the Third Amended Complaint.

    **SO ORDERED** this the 31st day of August 2020.

                                                Steven D. Grimberg
                                    United States District Court Judge